Michelle **BRELAND–STARLING** and Linda Prather, Plaintiffs,

v.

**DISNEY PUBLISHING WORLDWIDE,** et al., Defendants.

**No. 98 CIV. 3076(JES).**

United States District Court, S.D. New York.

Sept. 20, 2001.

---

Ronald L. Garnett, New York, NY, for Plaintiff.

John D. Geelan, Neil Kaufman, of counsel, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York, NY, Kenneth E. Newman, of counsel, New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Linda Prather ("Ms. Prather" or "plaintiff") brings this action against her employer. Disney Publishing Worldwide ("DPW"), and certain former and current DPW employees, alleging racial dis-crimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981, the New York State Human Rights Law, and the Administrative Code of the City of New York. Defendants now move for summary judgment against plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendants' motion.

## BACKGROUND

Plaintiff began working at DPW in September 1990 as the Production Director of Children's Books. See Affidavit of John D. Geelan dated December 19, 2000 ("Geelan Affidavit"), Exhibit ("Exh.") 2, September 4, 1990 letter from DPW to plaintiff (extending offer of employment). In 1994 DPW promoted plaintiff to Director, Production of Books where she oversaw the production of adult trade books. See Deposition of Linda Prather taken June 15, 16, August 3, September 28, & October 11, 2000 ("Prather Depo.") at 58–61. Plaintiff remained in that position until June 1999 when she transferred to DPW affiliate ABC, Inc. Throughout her time at DPW, plaintiff has periodically received merit pay increases and bonuses; defendants never decreased plaintiff's salary or demoted her.

In August of 1995, due to a corporate reorganization at DPW, plaintiff began to report to defendant Edward Zinser, the Vice President of Finance and Operation. See id. at 137–38; Deposition of Edward Zinser taken August 29, 2000 ("Zinser Depo.") at 28. Thereafter, in October 1996 DPW consolidated its book and magazine production units and created a new director position to oversee the combined unit. See Prather Depo. at 177. DPW promoted defendant Kevin Mullan to this position and one (1) year later promoted him again to Vice–President of Manufacturing and Production for Books and Mag-

azines. *See id.* at 170, 179–80; Zinser Depo. at 252–54; Geelan Affidavit, Exh. 1, (October 8, 1997 memo announcing promotion to vice president's position). Defendants contend that a DPW strategic move to increase magazine production together with cost saving concerns prompted the consolidation of these units and led to the choice of Mr. Mullan, who had extensive experience with magazine production. *See* Zinser Depo. at 249–57. Plaintiff, however, believes that the promotion of Mr. Mullan—or at least the failure to promote plaintiff to a vice-president's position—was the result of intentional discrimination by both Messrs. Zinser and Mullan. *See, e.g.,* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment dated March 21, 2001 ("Pl.Mem.") at 5. At no point prior to the instant suit did plaintiff either complain about discrimination or utilize defendants' anti-discrimination procedures. Moreover, plaintiff's personal diary does not contain any references to discriminatory treatment. *See* Prather Depo. at 369–72; 610–11.

As a result of the perceived discrimination at the hands of Messrs. Zinser and Mullan, plaintiff brought the instant action against defendants in April 1998. Plaintiff also contends that after she brought this suit defendants retaliated against her by diminishing her duties and her bonuses. In response to plaintiff's failure to promote allegation, defendants contend that plaintiff never applied for the joint production positions Mr. Mullan occupied, was not qualified for those positions, and did not fit DPW's criteria for promotion to a vice-president's position. Moreover, defendants argue that the retaliatory actions of which plaintiff complains are not materially adverse and that some of them even predate her filing of this lawsuit. Finally, defendants assert that plaintiff has not presented sufficient evidence of discrimi-

natory treatment to support her hostile work environment claim.

## DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

■ A plaintiff alleging employment discrimination under Title VII bears the initial burden of establishing a *prima facie* case. In order to establish a *prima facie* case for failure to promote, a plaintiff must show that (1) she is a member of a protected class; (2) she applied and was qualified for a position for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants to fill the position. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998) (internal quotations and citation omitted). In short, plaintiff must demonstrate that defendant "rejected [her for the job] under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't Community Af-*

*fairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If plaintiff can establish her *prima facie* case, the burden then shifts to defendants to articulate a legitimate, nondiscriminatory reason for the challenged action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If defendants meet this burden of production, plaintiff must show by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143, 120 S.Ct. 2097 (internal quotations omitted). However the burden of persuasion rests at all times with the plaintiff. *See id.* Accordingly, plaintiff may only avoid summary judgment if the Court determines after examining the entire record that plaintiff could persuade " 'the trier of fact that the defendant intentionally discriminated against the plaintiff.' " *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097).

▮ Plaintiff's failure to promote claims must be dismissed because she cannot establish a *prima facie* case. In short, plaintiff never applied for the position of Vice–President, Book Production and cannot demonstrate that she was qualified for the vice-president's position defendant Mullan occupied. With respect to the position of Vice–President, Book Production, defendant asserts—and the Court agrees—that because the position never existed and was never occupied by anyone, plaintiff cannot, as a matter of law, establish her *prima facie* case. The law on this question is clear and unmistakable: plaintiff must demonstrate that she applied for a particular position for which she was qualified and may not bring a claim "merely asserting that on several occasions she . . . generally requested promotion." *Brown*, 163 F.3d at 710. Plaintiff's testimony regarding her desire for promotion

is equally clear: she thought DPW should have created the position of Vice–President, Book Production for her because that was the next step in her upward career progression. *See* Prather Depo. at 96–98. However, "[a]n employee's mere dissatisfaction with the pace of his career progress, based on his subjective assessment of his own performance, is not enough to make out a prima facie case under Title VII." *Shabat v. Blue Cross Blue Shield of Rochester Area*, 925 F.Supp. 977, 987 (W.D.N.Y.1996), *aff'd sub nom, Shabat v. Billotti*, 108 F.3d 1370 (1997). Moreover, unlike in cases where a plaintiff claims she has generally requested a promotion and failed to receive one, plaintiff here doesn't even argue that her desire for promotion to a vice-president level position was widely known. Of course, were such a desire generally known, plaintiff still could not establish a *prima facie* case of discrimination because of her failure to apply for the specific—and indeed nonexistent—position she desired. Accordingly, the Court dismisses plaintiff's claim that defendants failed to promote her to Vice–President, Book Production.

It is not clear whether plaintiff is claiming discrimination based on defendants' failure to promote her to the joint production position awarded to defendant Mullan. Plaintiff does specifically contend that she should have been considered for and would have been competent in that position. *See* Prather Depo. at 174–75, 178–79. However, for the purposes of this motion the Court will assume that plaintiff has asserted a claim against defendants for failure to promote her to the vice-president's position awarded to Mr. Mullan. However, even granting plaintiff the benefit of every rational inference in her favor, she cannot establish that defendants rejected her for the joint production position under circumstances giving rise to an inference of discrimination.

■ To begin, the Court finds plaintiff has not established a *prima facie* case on this claim because of her failure to demonstrate she was qualified for the job.[1] Plaintiff, unlike Mr. Mullan who has a bachelor of science degree in marketing, has no college degree. *See* Prather Depo. at 20–21. Plaintiff also had extremely limited experience with computers—by contrast to Mr. Mullan who had extensive technical expertise. *See id.* at 211; Zinser Depo. at 254; Affidavit of Kevin Mullan dated December 19, 2000 ("Mullan Affidavit") at ¶ 5. Moreover, prior to his promotion Mr. Mullan had experience in producing both books and magazines; plaintiff had experience in books only and was completely unfamiliar with magazine production. *See* Deposition of Kevin Mullan taken July 28, 2000 ("Mullan Depo.") at 94–95; Mullan Affidavit at ¶ 3; Prather Depo. at 145–46, 822–23. Finally, at the time of his promotion, DPW's magazine business was considerably larger than its book business and the company planned to expand its magazine operation in conjunction with the consolidation of the book and magazine units. *See* Zinser Depo. at 249–57. Thus, an obvious qualification for the job was substantial expertise in magazines. Mr. Mullan had that expertise; plaintiff did not. Moreover, plaintiff does not dispute that such experience was essential to the joint production job that oversaw a department in which employees working on magazines outnumbered those producing books by at least three to one. *See* Prather Depo. at 180. For these reasons the Court finds that plaintiff simply was not qualified for the position DPW awarded to Mr. Mullan and has therefore failed to establish her *prima facie* case.

Even assuming, *arguendo*, that plaintiff could establish a *prima facie* case, her claim would still have to be dismissed because she does not offer any evidence to suggest that the legitimate nondiscriminatory reason defendants offer for promoting Mr. Mullan was a pretext for discrimination. DPW contends that it decided to create the joint production position and promote Mr. Mullan because of its interest in cost savings, the company's strategic decision to expand its magazine production, and Mr. Mullan's impressive job performance during his short tenure at DPW prior to October 1997. *See, e.g.*, Geelan Affidavit, Exh. 4, August 6, 1997 Memo from E. Zinser to M. Atkins recommending promotion of Mr. Mullan ("Promotion Memo"); Zinser Depo. at 249–54. In particular, defendants cite the millions of dollars in savings in print contracts and paper procurement Mr. Mullan achieved. *See* Promotion Memo at Bates page 0593. Moreover, defendants point to the criteria for promotion to a vice-president's position in the production department and note that Mr. Mullan, unlike plaintiff, supervised the requisite number of employees, received the necessary "Above–Target" performance reviews, and was responsible for a DPW division with the required levels for revenue and operating budget. *See id.* at Bates page 0594. Such evidence is sufficient to meet defendants burden of offering a legitimate, nondiscriminatory

---

1. Defendants urge that plaintiff's failure to apply for this job also provides a basis for rejecting her claim. The Court disagrees. DPW never posted the job and plaintiff only became aware that the position existed when it was announced that Mr. Mullan received it. There is no application requirement for a failure to promote claim in circumstances such as this where the claimant essentially had no opportunity to apply for a promotion and defendant was aware of claimant's desire for advancement. *See Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 387 (2d Cir.2000). The Court presumes for the purposes of this motion that defendants were aware of plaintiff's interests in a promotion to a vice-president's position. Accordingly, plaintiff's failure to apply for the joint production position does not bar her claim.

reason for not promoting plaintiff to the joint production position. Accordingly—and notwithstanding her failure to establish a *prima facie* case in the first instance—plaintiff can only prevail by coming forward with evidence that permits a rational inference that these offered reasons were false and that the real reason for defendants' actions was intentional discrimination. Plaintiff falls far short of meeting that burden.

Plaintiff offers the following items in response to defendants' non-discriminatory explanation. First, she emphasizes that DPW didn't make her aware of the criteria for promotion to vice-president and that, in any event, defendants did not publish such criteria in any official DPW publication. *See* Pl. Mem. at 9–11. Ms. Prather asserts—albeit in the form of an affidavit submitted in response to defendants' motion and without providing any substantiating evidence—that DPW promoted people outside the production department who did not fit all of these criteria. *See* Affidavit of Linda Prather dated March 9, 2001 ("Prather Affidavit" at ¶ 6). Plaintiff also cites evidence indicating both that Mr. Mullan had an interest in the joint production job prior to beginning work for DPW and that defendants planned on putting him in that position from the moment he was first hired. *See* Garnett Affidavit, Exh. C; Mullan Depo. at 16–18. According to plaintiff, this evidence demonstrates that the consolidation of the book and magazine units and the promotion of Mr. Mullan was a "cover" intended to mask discrimination against Ms. Prather. *See* Pl. Mem. at 8.

The Court disagrees. To begin, plaintiff has not shown that anyone similarly situated to her—most importantly Mr. Mullan—was provided with the promotion criteria she claims DPW withheld. Moreover, since possession or knowledge of these criteria would not have provided plaintiff with any advantage with respect to her desired promotion, they are therefore clearly irrelevant. To the extent plaintiff is asserting that such criteria were simply invented for the purpose of promoting Mr. Mullan instead of her, she relies exclusively on her own conclusory allegations regarding the promotion of other DPW employees who didn't meet these criteria. However, plaintiff fails to demonstrate how these other people—all of whom worked in different departments for supervisors other than Messrs. Zinser and Mullan—were similarly situated to her. *See* Prather Affidavit at ¶ 6; Defendants Local Rule 56.1 Statement ("Def. 56.1") at ¶¶ 50–51. Indeed, defendants do not contend that these promotion criteria apply company-wide, they only claim that they are relevant in the production area. *See* Def. 56.1 at ¶ 48. Additionally, the only jobs relevant to Ms. Prather's failure to promote claims are those for which she was eligible for promotion. She does not claim to have been eligible for promotion to vice-president jobs outside of the production area. Thus, the only similarly situated person for the purposes of this motion is Mr. Mullan since he was the only DPW employee other than plaintiff that defendants could have considered for the joint production promotion.[2] As already noted above, Mr. Mullan was eminently qualified for the joint production position and plaintiff offers nothing to indicate that defendants decision to promote him masked intentional discrimination.

Finally, even assuming defendants did invent these criteria as a part of their long

---

**2.** Interestingly, although plaintiff claims that defendants Zinser and Mullan are the only individuals that discriminated against her, none of plaintiff's other supervisors ever promoted plaintiff to a vice-president's level job or even recommended her for such a promotion. *See* Def. 56.1 at ¶ 39.

standing plan to promote Mr. Mullan, such behavior is consistent with DPW's stated non-discriminatory business purpose—to grow the magazine production group and consolidate it with the book group to achieve cost savings Mr. Mullan had already realized because of his considerable negotiating skills, technical expertise, and industry experience. In short, plaintiff offers nothing to demonstrate, as she must, that defendants' stated reason was false and that the real reason for failing to promote her was discrimination. Indeed, the best evidence that discrimination played no part in defendants' decisions can be found in her own personal diary. Plaintiff kept such a diary to record her "innermost thoughts" and to "stay on track with what was happening" to her at work from approximately 1996 to June of 1999. *See* Prather Depo. at 123–24. Nowhere in the hundreds of detailed entries in this diary is there any suggestion that defendants Mullan and Zinser discriminated against plaintiff because of her race. Plaintiff criticized Mr. Mullan's management style, personality and intelligence—but never claimed he was bigoted. *See* Prather Depo. at 369–72. None of the entries regarding Mr. Zinser's actions alleged a racially biased motivation. *See id.* at 610–11. In a fruitless and incredulous attempt to minimize the persuasiveness of this evidence, plaintiff explains that she didn't realize defendants were discriminating against her because of her race until October 1997 when she looked back to reassess the actions of defendants Zinser and Mullan. *See* Prather Depo. at 226, 913; Prather Affidavit at ¶ 15. However, even after October 1997, plaintiff made no diary entry alleging racial discrimination nor did she otherwise complain to anyone of such discriminatory treatment until this suit was filed. *See* Prather Depo. at 226. The Court concludes, therefore, that no rational juror could find that defendants intentionally discriminated

against plaintiff by failing to promote her to the joint production job.

Plaintiff also contends that DPW retaliated against her for filing the instant action. To establish a *prima facie* case of retaliation, plaintiff must show that (1) she was engaged in protected activity; (2) the employer was aware of the activity; (3) an adverse employment action was taken against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996); *accord Cifra v. General Electric Co.,* 252 F.3d 205, 216 (2d Cir. 2001). It is undisputed that plaintiff satisfies the first element of her *prima facie* case. Moreover, for the purposes of this motion, the Court will assume all relevant persons were aware of such activity. Plaintiff has not, however, demonstrated that defendants took adverse employment action against her.

While there is no bright-line rule as to what constitutes an adverse employment action, the Second Circuit emphasizes that " 'not every unpleasant matter short of [discharge or demotion] creates a cause of action' " for retaliation. *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997) (quoting *Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir.1994)); *accord Richardson v. New York State Dept. of Correctional Serv.,* 180 F.3d 426, 446 (2d Cir.1999). Rather, a plaintiff "suffer[s] an 'adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.' " *Richardson,* 180 F.3d at 446 (quoting *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997)).

The actions of which plaintiff complains did not effect a materially adverse change in her employment. First, Ms. Prather argues that defendants retaliated against her by diminishing her duties. It is undisputed that in 1998 DPW consolidated the

paper purchasing function for print production and hired Nadine Britt to accomplish this change. *See* Prather Depo. at 538–39. As a consequence, Ms. Prather was no longer exclusively responsible for paper manufacturer vendor selection, but she retained her core function of directing the production of DPW's books. *See id.* at 539. Yet, because the paper vendor contract for ninety percent of the books DPW produced was already in place, this change only affected ten percent of Ms. Prather's vendor selection duties. *See id.* at 540–41. Moreover, the change implemented was largely a procedural one that required only that Ms. Prather and others in the book production unit discuss vendor selection with Ms. Britt prior to making an assignment to that vendor. *See* Garnett Affidavit, Exh. D. Accordingly, the Court finds that this alleged diminishment of responsibilities[3] did not constitute impermissible retaliation.[4]

Plaintiff also complains that she was not fully involved in the "Oracle Project." Plaintiff fails to demonstrate, however, how lack of involvement in a technology project of this sort could possibly constitute a materially adverse change in her employment status; indeed, such a minor change in an employee's duties falls far short of the type of actionable wrong that Title VII seeks to remedy. Yet, even if

such deprivation were somehow materially adverse, plaintiff's claim here still fails both because she was ultimately allowed to attend any meeting on this project she desired and because defendants initiated the project and allegedly deprived her of involvement in 1997, long before the instant suit. *See* Prather Depo. at 284–85; Geelan Affidavit at Exhs. 19–20.

 Finally, plaintiff complains defendants retaliated against her because in 1998 she received a negative performance evaluation, no increase in merit pay, and no bonus. However, a single negative performance evaluation which follows positive performance evaluations is, standing alone, insufficient evidence to defeat summary judgment for a discrimination claim. *See Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56–57 (2d Cir.1998). Only if there is other evidence of discriminatory treatment can such a negative review have any persuasive effect. *See id.* Yet, as already noted above, none of the other evidence plaintiff submits hints in any way at racially motivated discrimination by defendants. Moreover, the overall below target review plaintiff received in 1998 followed three consecutive years of reviews[5] that contained negative ratings in specific subcategories such as strategic thinking, resource management, and cost savings. *See* Def. 56.1 at ¶¶ 120–33. The 1998 review, not

---

3. To the extent that plaintiff is claiming defendants diminishment of her duties constitutes independently actionable racial discrimination, such allegations are completely unsupported. Indeed, defendants actually increased Ms. Prather's responsibilities with respect to book production in 1997 by adding the "Mouseworks" line of books to her list of titles and allowing her to hire an additional staff member in connection with this addition. *See* Prather Depo. at 270–74.

4. Moreover, plaintiff cannot establish any causal connection between the removal of purchasing duties and the filing of the instant action because, as plaintiff concedes, defen-

dants made the decision to hire a person for this function prior to her filing this suit. *See* Prather Depo. at 543.

5. Indeed, plaintiff initially received a "below target" review in 1995 based on the assessments of Ms. Gordon and Mr. Miller. These two co-workers—people whom plaintiff does not accuse of racial discrimination—submitted information to Mr. Zinser because Mr. Zinser had at that point just started supervising plaintiff. Only after plaintiff's vehement objections did Mr. Zinser changed the review to an overall "on target" rating. *See* Def. 56.1 at ¶¶ 120–22.

surprisingly, continued this theme but gave plaintiff an overall below target rating despite on target ratings in particular subcategories. *See* Geelan Affidavit, Exh. 15. Although her salary was not decreased, plaintiff complains that she did not receive a merit increase or bonus in 1998. *See* Prather Depo. at 73. Notwithstanding evidence suggesting that perhaps she did receive at least a salary increase in 1998, *see id.* at 73–74, the failure to either increase plaintiff's salary or give her a bonus cannot alone support a retaliation claim—especially considering that plaintiff has not shown that other employees with "below target" reviews were treated any better. In summary, the Court dismisses plaintiff's retaliation claims because she has failed to demonstrate that any of defendants actions produced a materially adverse change in the terms and conditions of her employment.

█ Plaintiff's claim that she was subject to a racially hostile work environment because of her treatment by Mr. Mullan is both entirely unsupported by the evidence and fails as a matter of law because plaintiff did not avail herself of DPW's anti-discrimination procedures. Whether construed as a claim for racial harassment (as plaintiff indicates in her complaint) or as one for a hostile work environment (as plaintiff indicates in her response to defendants' motion), plaintiff has not demonstrated, as she must, that she was subject to severe and pervasive racially discriminatory treatment. *See, e.g., Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767–68 (2d Cir.1998). As noted above in connection with the Court's discussion of plaintiff's diary, she does not allege that Mr. Mullan—or anyone else—made a single racially derogatory comment about anyone, or that he engaged in/permitted other expressly racially bigoted behavior. Indeed, the entire basis for plaintiff's hostile work environment claim is that Mr. Mullan was often abrasive and that she had diffi-

culty working for him. *See, e.g.,* Pl. Mem. at 12. Yet it is well settled that "Title VII prohibits discrimination [and] is not a shield against harsh treatment at the workplace." *Shabat,* 925 F.Supp. at 984 (internal quotations omitted). Moreover, plaintiff concedes that other employees who were not African–American also had difficulty with Mr. Mullan's management style. *See* Prather Depo. at 155–56, 351–52, 361–62. The only rational inference a juror could draw from such evidence is that employees of all races had difficulty with Mr. Mullan's management style. Accordingly, the Court finds that plaintiff has failed to meet her threshold burden of proof for her hostile work environment claim.

Even if plaintiff could establish a *prima facie* case of hostile work environment discrimination, she is still subject to summary judgment because of her unreasonable failure to take advantage of DPW's anti-discrimination procedures. The Supreme Court recently announced that the existence of a corporate anti-harassment policy and the failure of a claimant to reasonably avail herself of such policy will normally provide sufficient proof for a complete affirmative defense to hostile work environment claims of the sort plaintiff makes here. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807–808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Plaintiff was aware of DPW's anti-discrimination policy and its complaint mechanisms. *See* Prather Depo. at 196, 218–20. Plaintiff never used these avenues to complain of racial discrimination. Her explanation that her failure was the result of her not realizing defendants were racially discriminating against her until October 1997 itself demonstrates the legal insufficiency of her discrimination claim. *See id.* at 226. It is hard to imagine that one can suffer racial discrimination without at least being conscious of its existence. In any event, as previously noted, at no time between then

and her filing of the instant action did plaintiff complain to anyone at DPW about racial discrimination by Mr. Mullan or anyone else. *See id.* Plaintiff's failure to offer a reasonable explanation for her inaction compels the Court to dismiss her hostile work environment claim.

Finally, having denied plaintiff's federal causes of action, the Court declines to exercise its discretion to consider plaintiff's state law discrimination claims. *See Carnegie–Mellon v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *accord In re Porges,* 44 F.3d 159, 162 (2d Cir.1995) (Court is "not required to dismiss [plaintiff's] state claims [but] dismissal of such claims is the general rule"). The Court therefore dismisses these claims without prejudice to being renewed in the appropriate state court venue.

### CONCLUSION

For the foregoing reasons the Court grants defendant's motion for summary judgment and dismisses all of plaintiff's claims. The Clerk of the Court is hereby directed to close the above-captioned action.

It is **SO ORDERED.**